**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4943

UNITED STATES OF AMERICA,

                                   Plaintiff - Appellee,

        versus

KINDALE TYRONE CROCKTON,

                                   Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Fox, Senior
District Judge.  (CR-04-78-F)

Argued:  January 31, 2007        Decided:  April 16, 2007

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Raleigh, North Carolina, for Appellant.  Anne Margaret
Hayes, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**
Thomas P. McNamara, Federal Public Defender, Raleigh, North
Carolina, for Appellant.  Frank D. Whitney, United States Attorney,
Robert E. Skiver, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina; Susanna M.
Ringler, Third Year Law Student, WAKE FOREST UNIVERSITY SCHOOL OF
LAW, Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kindale Crockton was tried and convicted for one count of possession of a firearm by a felon. On appeal he asserts that he is entitled to a new trial because the district court erroneously admitted a police record into evidence. Although it was error to admit the record, the error was harmless. We therefore affirm Crockton's conviction. Crockton also asserts that the district court committed Sixth Amendment error because the facts underlying a sentencing enhancement he received were neither admitted by him nor proved to a jury beyond a reasonable doubt. We conclude that any Sixth Amendment error, if it occurred, was harmless because the district court announced an identical, alternative sentence. We therefore affirm Crockton's sentence.

I.

On the morning of July, 18, 2003, Officer William Holland of the Fayetteville, North Carolina, Police Department was conducting surveillance of a house on Progress Street in response to complaints about prostitution and drug dealing in the neighborhood. Officer Holland saw Carl McLaughlin and Terrence McNeill engaged in what he believed to be a drug sale. Shortly thereafter, Crockton arrived at the house by car. When he exited the car, he went up to McLaughlin and McNeill and appeared to hand them something. Crockton then left on foot. Shortly thereafter,

2

Officer Holland watched as Crockton returned carrying "some type of long firearm wrapped in a white plastic bag." J.A. 289. This time, Crockton walked around to the backyard where McNeill and McLaughlin were standing and handed the gun to McNeill. McNeill unloaded and reloaded the weapon before hiding it under some bushes. Crockton then drove off. At this point, Officer Holland called for backup, approached the house, and placed McNeill and McLaughlin in handcuffs while he retrieved the firearm, a 12-gauge shotgun. Minutes later, Crockton returned to the house on foot. Officer Holland told him to be seated with McNeill and McLaughlin but did not place him in handcuffs. Although no one was arrested at the time, Holland filled out field interview cards on all three men.

On March, 17, 2004, Crockton was charged with one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. During Officer Holland's testimony at trial, the government moved to admit the field interview card that Holland had completed with respect to Crockton. Defense counsel objected to the card's admissibility under Fed. R. Evid. 803(8)(B), and the court held a bench conference. Defense counsel asserted that the card was an inadmissible police report. Looking only at the front side of the card, the district court disagreed, stating that the card was "just a straight identity record with the name [and] address" of the defendant. J.A. 313.

3

The district court did not comment on the section on the front of the card titled "Sus Act" under which boxes next to the words "Narcotics" and "Weapons" had been checked. J.A. 691. The district court was unaware that the back of the card also contained notations by Officer Holland. Under the header "Demeanor," Officer Holland had checked "Nervous." Similarly, under "Drug Type" Holland had checked "Cocaine" and under "Weapon/Tool" he had marked "Rifle/Pistol." In a section of the card titled "Remarks," Officer Holland wrote, "Dealing narcotics & possessing firearm by a felon." J.A. 692.

Following the bench conference, the prosecutor resumed the examination of Officer Holland, asking "[T]hat information on there is what you got from him on the front side of the card?" J.A. 314. Officer Holland replied affirmatively, and the prosecutor then asked, "What was the purpose in obtaining that information?" Holland answered, "Basically our records keeping, knowing who's on -- who was on the scene. That's for biographical information purposes." J.A. 314. The court then admitted the card into evidence.

In addition to Officer Holland, both McNeill and McLaughlin testified against Crockton. McNeill stated that Crockton had asked him to hold (or store) the shotgun, and McLaughlin corroborated Officer Holland's account of the manner in which Crockton carried the shotgun and how it had been wrapped in

4

plastic. McNeill and McLaughlin further testified that Crockton had pressured them not to implicate him in the gun possession. This testimony was corroborated by another witness who stated that Crockton told him about his attempts to influence McNeill's testimony through threats.

In an effort to impeach McNeill and McLaughlin, the defense called Officer Gregory Guilder, a dispatcher for the Fayetteville Police Department. Officer Guilder testified that computer aided dispatch reports (CAD reports) made of Holland's radio transmissions on July 18 concerned only McNeill and McLaughlin. During closing argument, defense counsel asserted that the fact that Crockton's name had not been put out over the radio was significant and implied that Holland may have fabricated Crockton's involvement with the gun. The prosecutor addressed this argument on rebuttal, stating:

> Now, some remarks made about the CAD reports and that only Mr. McNeill and Mr. McLaughlin was there on the CAD report. . . . we know from . . . these field interview cards, we know exactly what Officer Holland was investigating because it says it on the back. . . . we look at Mr. Crockton's [field interview card], filled out at the time this event took place. Says: dealing narcotics and possessing a firearm by a felon. Obviously Officer Holland's contemporaneous notes on 6,7, and 8 [the respective exhibit numbers for Crockton, McNeill, and McLaughlin's field interview cards] support his version of the facts. He couldn't go back and make those later. Those were made at the time. That was his testimony.

J.A. 639. The defense did not object to the mention of information contained on the back of the card. However, after the

5

jury left the courtroom, the district court expressed its frustration with the government's line of argument, stating:

> Apologize for the ignorance. . . . I had no idea there was a charge written on the back. . . . It says what he was doing. You may have a basis for appeal, I will let it go to the jury but I will tell you it's all I can do to contain myself to find this out at the end of the case.

J.A. 646. The district court then issued a curative instruction to the jury, stating that the cards, which had not been published to the jury, were not to be considered substantive evidence with regard to the defendant's guilt or innocence and would not be sent to the jury room.

The jury returned a guilty verdict. At Crockton's sentencing hearing on October 20, 2004, the defense raised an objection under Blakely v. Washington, 542 U.S. 296 (2004), to the two-point enhancement for committing the current offense within two years of release from custody. The objection was overruled. The district court sentenced Crockton to 120 months' imprisonment to be followed by a three-year term of supervised release. The district court announced an identical, alternate sentence pursuant to 18 U.S.C. § 3553(a).

Crockton appeals his conviction and sentence. He argues that the district court's erroneous admission of his field interview card and the prosecution's comments to the jury about the contents of that card entitle him to a new trial. Crockton also

argues that his enhanced sentence violates the Sixth Amendment. We address both issues in turn.

## II.

We begin with the question of whether the district court erred in admitting Crockton's field interview card into evidence. While Fed. R. Evid. 803(8) allows certain public records and reports to be admitted into evidence as hearsay exceptions, subpart (B) of the rule explicitly excludes "in criminal cases" written reports of "matters observed by police officers." Police investigative reports are inadmissible because they are generally crafted with an eye toward prosecution, and their "use against the accused in a criminal case" would bring about "the almost certain collision with confrontation rights." Fed. R. Evid. 803(8) advisory committee's note. We review the district court's evidentiary ruling for abuse of discretion, United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997), keeping in mind that any "error . . . that does not affect substantial rights must be disregarded," Fed. R. Crim. P. 52(a).

The district court admitted Crockton's field interview card because it believed that the card contained only "straight identity" information. J.A. 313. But the front of the card also contained Officer Holland's notations about Crockton's alleged activities in the section titled "Sus Act." Holland's check marks

7

next to "Narcotics" and "Weapons" are written recordings of observations made during a criminal investigation. Accordingly, the district court abused its discretion in failing to exclude the card under Rule 803(8)(B).

Of course, when the district court realized that the back of the card contained the statement "Dealing narcotics & possessing firearm by a felon," the court recognized its mistake and immediately issued a curative instruction to the jury. Given the curative instruction, the fact that the card was never published to the jury, and the strong case presented against Crockton, the government argues that the error was harmless.

Crockton contends that admission of the field interview card was not harmless. He argues that the prosecutor in closing argument attempted "to capitalize on the inadmissible information" contained in the card by turning it into "an accusation against Mr. Crockton for a crime for which he did not stand trial: 'dealing narcotics.'" Appellant's Br. at 23. Crockton contends that such an accusation constitutes prosecutorial misconduct. Crockton did not object to the prosecutor's argument at trial. Moreover, on appeal Crockton does not raise his prosecutorial misconduct argument as a stand alone claim. Instead, he argues that admission of the card was not harmless because it led to and facilitated prosecutorial misconduct during the government's closing argument. Thus, if the prosecutor's comments do not rise to the level of

reversible prosecutorial misconduct, the district court's error in admitting the card would have to be viewed as harmless.

Our court applies "a two-pronged test for determining whether a prosecutor's misconduct in closing argument 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). A defendant must show "[1] that the [prosecutor's] remarks were improper and [2] that they prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." Id. (quoting United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995)). While the prosecutor's remark may have been improper, Crockton's substantial rights were not "prejudiced to the point of denying him a fair trial." Id. at 299. We have identified a number of factors, no single one determinative, that are relevant to the prejudice inquiry, including:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Id. (quoting Adam, 70 F.3d at 780). "We also consider (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel, and (6) whether curative instructions were given to the jury." Id. at 299 (citing United States v. Young, 470 U.S.

9

1, 12-13 (1985) and United States v. Harrison, 716 F.2d 1050, 1053 (4th Cir. 1983)). Taken together, these considerations convince us that Crockton was not denied a fair trial. Any tendency toward prejudice caused by the prosecutor's mention of Officer Holland's accusation of drug dealing is outweighed by the single mention of that allegation, the strength of the government's case, and the curative instruction given to the jury. Because we conclude that the government's closing argument did not prejudice Crockton's substantial rights, we must also conclude that the district court's decision to admit the field interview card was ultimately harmless. We therefore affirm Crockton's conviction.

### III.

We turn last to Crockton's challenge to his sentence. Our decision in United States v. Revels, 455 F.3d 448 (4th Cir. 2006), controls and requires us to affirm the sentence. We need not reach the question of whether Crockton's sentence was enhanced in violation of the Sixth Amendment because even if that was the case, "the district court indicated that if the Guidelines were non-mandatory, it would have imposed the same 120-month sentence pursuant to the factors in 18 U.S.C. § 3553(a)." Id. at 452. As such, any Sixth Amendment error is harmless because it did not "actually affect[] the outcome of the proceedings." Id. (quoting United States v. Hughes, 401 F.3d 450, 458 (4th Cir. 2005)).

\* \* \*

For the reasons stated, Crockton's conviction and sentence are

AFFIRMED.